NO. 22-70007

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

JARRELL NEAL,
*Petitioner – Appellee*

v.

DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY,
*Respondent – Appellant*

_____

Appeal from the United States District Court for
The Eastern District of Louisiana, No. 2:15-CV-5390,
The Honorable Chief Judge Nannette Jolivette Brown, Presiding

_____

## REPLY BRIEF OF APPELLANT DARREL VANNOY,
## WARDEN, LOUISIANA STATE PENITENTIARY

_____

**PAUL D. CONNICK, JR.**
**DISTRICT ATTORNEY**
24th JUDICIAL DISTRICT
STATE OF LOUISIANA

Thomas J. Butler (La. Bar No. 22982)
Matthew R. Clauss (La. Bar No. 31664)*
Assistant District Attorneys
Office of the District Attorney
200 Derbigny Street
Gretna, Louisiana 70053
Telephone: (504) 368-1020

*Counsel for Respondent – Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................... ii

TABLE OF AUTHORITIES ...............................................................iv

ARGUMENT...................................................................................7

    I.  It was error to disregard the state court's factual determination that Neal's trial counsel acted strategically; the district court failed to apply the correct standard of review, and, in any event, the state court's finding was neither rebutted nor unreasonable in light of the record before it. ..............................7

    A.  The district court's failure to afford this factual determination a presumption of correctness has not been waived. ..................................................7

    B.  Applying the correct standard of review, it was error for the district court to disregard the state court's factual determination in this case; the record does not contain clear and convincing evidence that trial counsel's conduct was a result of oversight, rather than strategy. ....................................................... 11

        1. The state postconviction court was entitled to evaluate the credibility of trial counsel's affidavit and could do so with or without a hearing. ............12

        2. Trial counsel's affidavit was neither clear nor convincing. .....................14

    II.  Even under de novo review, Neal cannot show he received ineffective assistance of counsel; thus, *a fortiori*, he fails to satisfy the doubly deferential "unreasonable application" exception to ADEPA's relitigation bar. ............21

    A.  Neal has not shown that his counsel performed deficiently. .........................21

    B.  Neal did not suffer prejudice. .....................................................................27

CONCLUSION................................................................................ 31

CERTIFICATE OF SERVICE...........................................................32

CERTIFICATE OF ELECTRONIC COMPLIANCE ..........................................32

CERTIFICATE OF COMPLIANCE ....................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brumfield v. Cain*,
  576 U.S. 305, 135 S. Ct. 2269, 192 L. Ed. 2d 356 (2015) ....................................7, 8
*Burt v. Titlow*,
  571 U.S. 12, 134 S.Ct. 10; 187 L.Ed.2d 348 (2013) ........................... 22
*Cullen v. Pinholster*,
  563 U.S. 170 ...................................................................................10
*Geiger v. Cain*,
  540 F.3d 303 (5th Cir. 2008) ........................................................ 22
*Goodwin v. Johnson*,
  132 F.3d 162 (5th Cir. 1998) ........................................................21
*Granite Rock Co. v. Teamsters*,
  561 U.S. 287, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) ....................... 8
*Guidry v. Lumpkin*,
  2 F.4th 472 (5th Cir. 2021) ...........................................................12
*Harrington v. Richter*,
  131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) ..................................... 10, 12, 15
*Hughes v. Vannoy*,
  7 F.4th 380 (5th Cir. 2021) ........................................................... 22
*Kinsel v. Cain*,
  647 F.3d 265 (5th Cir. 2011) ........................................................14
*Langley v. Prince*,
  926 F.3d 145 (5th Cir. 2019) .........................................................8, 9
*LaVallee v. Delle Rose*,
  410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973) ...........................21
*Marshall v. Lonberger*,
  459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) .........................21
*Miller-El v. Dretke*,
  545 U.S. 231, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005) ....................16
*Murphy v. Davis*,
  732 Fed.Appx. 249 (5th Cir. 2018) ...................................................13

*Pippin v. Dretke*,
    434 F.3d 782 (5th Cir. 2005) ...............................................................14
*Rambaran v. Sec'y, Dep't of Corr.*,
    821 F.3d 1325 (11th Cir. 2016) ...........................................................11
*Rice v. Collins*,
    546 U.S. 333, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) ......................16
*Shinn v. Ramez*,
    142 S.Ct. 36, 212 L.Ed.2d 713 (2 .......................................................11
*State v. Butler*,
    322 So.2d 189 (La. 1975) .....................................................................31
*State v. Holmes*,
    388 So.2d 722 (La. 1980) .....................................................................31
*State v. Neal*,
    2000-0674, p. 13 (La. 6/29/01); 796 So.2d 649 ..................................31
*United States v. Bernard*,
    762 F.3d 467 (5th Cir. 2014) ...............................................................12
*Valdez v. Cockrell*,
    274 F.3d 941 (5th Cir. 2001) ...............................................................14
*Ward v. Stephens*,
    777 F.3d 250 (5th Cir. 2015) ...............................................................11
*White v. Woodall*,
    134 S.Ct. 1697, 188 L.Ed.2d 698 (2014) .............................................10
*Williams v. Maggio*,
    695 F.2d 119 (5th Cir. 1983) ...............................................................31
*Wood v. Allen*,
    130 S.Ct. 841, 175 L. Ed. 2d 738 (2010) .............................................16
*Woodford v. Visciotti*,
    537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) ..........................10

## Statutes

28 U.S.C. § 2254(e) ................................................................... 10, 11, 14
28 U.S.C. §2254(d)..............................................................10, 11, 14, 17
La.C.Cr.P. art. 929 ...........................................................................13

## Rules

Fed. R. App. P. 32(a) (7) (B) .....................................................................36
Fed. R. App. P. 32(a)(5) ...........................................................................36
Fed. R. App. P. 32(a)(6) ...........................................................................36
Fed. R. App. P. 32(f) .................................................................................36
Fed. R. Civ. Pro. Rule 52(a)(6)..................................................................14
Rule 15.2 of the Rules of the Supreme Court of the United States......................... 7

## Other Authorities

Brian R. Means, *Federal Habeas Manual* § 3:97 (2022).......................................... 8

# ARGUMENT

**I. It was error to disregard the state court's factual determination that Neal's trial counsel acted strategically; the district court failed to apply the correct standard of review, and, in any event, the state court's finding was neither rebutted nor unreasonable in light of the record before it.**

### A. The district court's failure to afford this factual determination a presumption of correctness has not been waived.

Neal's reliance on *Brumfield v. Cain*, 576 U.S. 305, 135 S. Ct. 2269, 192 L. Ed. 2d 356 (2015) for the proposition that the State can waive the application of a statutorily mandated standard of review is misplaced. In that case, the United States Supreme Court "deemed waived" on writ of certiorari, the issue of review under the "arguably more deferential standard set out in § 2254(e)(1)" rather than under §2254(d)(2)'s "unreasonable determination of the facts" standard because, there, the issue had not been raised by the State in its opposition to the petitioner's application for a writ of certiorari, and first appeared in the State's merits brief after certiorari had already been granted. *Id.* at 322–23. However, the Court's holding in *Brumfield* relied on Rule 15.2[1] of the Rules of the United States Supreme Court; it did not announce a rule of procedure applicable to this appeal as of right. *Id.* at 322–

---

1.  Currently, that rule states: "Counsel are admonished that they have an obligation to the Court to point out in the brief in opposition, and not later, any perceived misstatement made in the petition. Any objection to consideration of a question presented based on what occurred in the proceedings below, if the objection does not go to jurisdiction, may be deemed waived unless called to the Court's attention in the brief in opposition." Rule 15.2 of the Rules of the Supreme Court of the United States (2019).

23 *citing Granite Rock Co. v. Teamsters,* 561 U.S. 287, 306, 130 S.Ct. 2847, 177

L.Ed.2d 567 (2010) (a case based on Rule 15.2); *accord* Brian R. Means, *Federal Ha-*

*beas Manual* § 3:97 (2022) (concluding that the holding in *Brumfield* was that "a

party's failure to address whether AEDPA provides the appropriate standard of re-

view may be waived in the Supreme Court if the party fails to raise that issue in its

brief in opposition to certiorari.") Hence, while that case represents a rule of Su-

preme Court practice relating to issues preserved after a grant of a discretionary writ,

it does not imply a similar rule of appellate practice limiting issues on this appeal. In

any event, even if the Court's opinion in *Brumfield* could shoulder the inference Neal

assigns to it—which it cannot—the posture in this case is manifestly dissimilar to

that in *Brumfield*; here, the correct standard of review was squarely before the trial

court; the State invoked it, Neal acknowledged it, and the district court recited it—

the court simply failed to apply it. *Brumfield* is distinguishable.

Neal's attempt to distinguish *Langley v. Prince*, 926 F.3d 145, 162 (5th Cir.

2019) (en banc), on the other hand, falls short. As the State noted previously and as

Neal correctly points out—the alleged waiver in *Langley* explicitly related to the

standard of review required by §2254(d) not §2254(e)(1), the provision at issue here.

However, this Court's reasoning in *Langley* is nevertheless applicable. There, this

Court held that, even after the panel stage, on rehearing en banc, "[t]he relitigation

bar" under 28 § U.S.C. 2254(d) "constrains our ability to award habeas relief regardless of what counsel cites or does not cite." *Langley*, 926 F.3d at 162. This conclusion was based on the wording of § 2254(d), which this Court quoted as follows: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court *shall not be granted* with respect to any claim that was adjudicated on the merits in State court [unless statutory exceptions are satisfied]." *Langley,* 926 F.3d at 162 (emphasis supplied by the *Langley* en banc majority). Considering this mandatory language, this Court said "[e]very court of appeals to consider the question—including ours—has held a State's lawyers cannot waive or forfeit § 2254(d)'s standard." *Langley*, 926 F.3d at 162. While, in *Langly*, this reasoning only specifically addressed §2254(d), it applies with equal force to Neal's waiver argument under §2254(e)(1) because the same mandatory language that *Langly* said precluded waiver under § 2254(d) also appears in §2254(e)(1), which states: "[A] determination of a factual issue made by a State court *shall be* presumed to be correct. The applicant *shall* have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1) (emphasis added). Like §2254(d), §2254(e)(1) is addressed directly to courts, not to litigants. Here, Congress has conditioned a federal district court's power to disregard a state court's factual determination on a petitioner's satisfaction of §2254(e)(1)'s requirements—

requirements which, no less than those in §2254(d), form "part of the basic structure of federal habeas jurisdiction" and are "designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011) (discussing § 2254(d)). Like §2254(d), §2254(e)(1) is "*a provision of law* that some federal judges find too confining, but *that all federal judges must obey.*" *White v. Woodall*, 134 S.Ct. 1697, 1701, 188 L.Ed.2d 698 (2014) (emphasis added); *see also Cullen v. Pinholster*, 563 U.S. 170, 183 n. 3, 131 S.Ct. 1388, 1399 n. 3, 179 L.Ed.2d 557 (2011) (criticizing the dissent for failing to "take seriously" AEDPA's "*requirement* that federal courts defer to state-court decisions") (emphasis added); *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (noting that AEDPA's "highly deferential standard for evaluating state-court rulings ... *demands* that state-court decisions be given the benefit of the doubt") (emphasis added) (internal quotation marks omitted). Indeed, the United States Supreme Court recently held regarding §2254(e)(2): "Where Congress has erected a constitutionally valid barrier to habeas relief, a court *cannot* decline to give it effect." *Shinn v. Ramirez*, 142 S.Ct. 1718, 1736, 212 L.Ed.2d 713 (2022).

In this case, Neal's waiver argument, in effect, insists that "unless the attorney for the State reminds the judge at the earliest opportunity that [§2254(e)(1)]

exists and ought to be followed, the judge is free to ignore its commands." *See Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1331–32 (11th Cir. 2016) (discussing §2254(d)). "But the requirements of [§2254(e)(1)] are just that: requirements. A judge may not ignore them, a party cannot waive them." *Id.* Hence, as this Court has said previously, under AEDPA, "[a] party cannot waive, concede, or abandon the applicable standard of review." *Ward v. Stephens*, 777 F.3d 250, 257 (5th Cir. 2015), *abrogated on other grounds by Ayestas v. Davis*, 200 L.Ed.2d 376; 138 S.Ct. 1080 (2018). This principle is every bit as true for §2254(e)(1) as it is for §2254(d).

### B. Applying the correct standard of review, it was error for the district court to disregard the state court's factual determination in this case; the record does not contain clear and convincing evidence that trial counsel's conduct was a result of oversight, rather than strategy.

In his brief to this Court, Neal characterizes the district court's holdings as having been based on a complete lack of evidence suggesting his counsel acted strategically. But this argument misunderstands the mandatory presumptions and the burden of proof which governed in state court; indeed, if correct, this argument would constitute still more evidence the district court failed to give the state-court's factual determination the presumption it was entitled to under AEDPA.

At no stage in these proceedings was affirmative evidence that trial counsel acted strategically required to support the state court's factual finding—this finding

was nothing more than the natural consequence of Neal's failure to carry his burden of proof. During the state post-conviction proceedings, Neal's trial counsel was presumed to have acted strategically. *E.g., Harrington v. Richter*, 562 U.S. 86, 109, 131 S. Ct. 770, 178 L.Ed.2d 624 (2011) ("There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect."); *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014) ("Because decisions regarding cross-examination are strategic, they usually will not support an ineffective assistance claim."). Neal bore the entire burden of persuading the state post-conviction court that the opposite was true. *Guidry v. Lumpkin*, 2 F.4th 472, 493 (5th Cir. 2021), *cert. denied*, 142 S.Ct. 1212; 212 L.Ed.2d 218 (2022). Hence, the state court was entitled to reject Neal's evidence as unpersuasive and—as discussed in the State's original brief, and for the additional reasons outlined below—there was ample reason for it to have done so. The consequence of this determination was merely to confirm *Strickland's* presumption of strategy. It was error for the district court to hold otherwise.

> ### 1. The state postconviction court was entitled to evaluate the credibility of trial counsel's affidavit and could do so with or without a hearing.

As the fact-finder, the state court was not required to credit the assertions in trial counsel's affidavit—still less, Neal's debatable interpretations of that affidavit.

And, here, the state post-conviction court had an adequate basis upon which to evaluate Neal's claims for relief: Neal was given years to prepare his state post-conviction application and was permitted to file an application which, including its exhibits, was hundreds of pages long. On appeal, Neal makes much of the fact that the state court did not hold an evidentiary hearing. Yet, even in federal court, "[a]n evidentiary hearing is not required if the record refutes the applicant's factual allegations…." *Murphy v. Davis*, 732 Fed.Appx. 249, 262–64 (5th Cir. 2018). This is no less true in Louisiana post-conviction proceedings. *See* La.C.Cr.P. art. 929 ("If the court determines that the factual and legal issues can be resolved based upon the application and answer, and supporting documents … the court may grant or deny relief without further proceedings.") And this court has previously held that the presumption of correctness that attaches to state court findings of fact under AEDPA applies even in cases where the habeas petitioner was denied a full and fair hearing in state court. *Valdez v. Cockrell,* 274 F.3d 941, 942 (5th Cir. 2001) ("[A] full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor applying § 2254(d)'s standards of review."). In this case, the state post-conviction court was intimately familiar with Neal's trial counsel, *see* ROA.17081 (post-conviction court notes that "defendant was represented by one of the most seasoned and experienced attorneys in Jefferson Parish.");

13

hence, in at least this regard, it was better positioned than the district court to evaluate the credibility of trial counsel's affidavit against the evidence at trial, the prior proceedings, and the state-court record. Under these circumstances, this Court has said, "[a] trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are virtually unreviewable by the federal courts." *Kinsel v. Cain*, 647 F.3d 265, 270 n.17 (5th Cir. 2011) *quoting Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005); *cf.* Fed. R. Civ. Pro. Rule 52(a)(6) ("Findings of fact, *whether based on oral or other evidence*, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.") (emphasis added). In making this credibility call, Louisiana's post-conviction court was right to have in mind the Supreme Court's warning, in *Harrington v. Richter*, that: "[a]fter an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome." 562 U.S. 86, 109; 131 S.Ct. 770, 790; 178 L.Ed.2d 624 (2011).

### 2.    Trial counsel's affidavit was neither clear nor convincing.

As discussed in the State's opening brief, trial counsel's affidavit does not constitute "clear" evidence his representation of Neal was the result of oversight,

rather than strategy, because that affidavit's language is susceptible to multiple reasonable interpretations. Again, in both its original and supplemental order, the district court interpreted trial counsel's affidavit to mean that he had "admitted that there was no strategy behind his decision not to use the reports to impeach Arthur Darby." ROA.2982, 3044. But this was no more than an interpretation. In fact, trial counsel's affidavit states: "I did not review the physical or forensic evidence in the case …." ROA.351. Evidently, the district court interprets the phrase "forensic *evidence*" to mean "forensic *reports*." However, later in the affidavit—when trial counsel was unambiguously referring to the footprint and serology reports—he stated: "[p]ost-conviction counsel has *also* shown me the forensic *reports* listed above." ROA.351 (emphasis added). Hence, counsel used different language to refer to the serology and footprint reports; he did not repeat the phrase "forensic evidence," upon which the district court bases its interpretation. In any event, manifestly, scientific reports *concerning* forensic evidence are simply not the same thing as "forensic evidence." Hence, the district court's conclusion that the phrase "forensic evidence" in trial counsel's affidavit unquestionably also refers to forensic reports, concerning the examination of forensic evidence, is far from unassailable. The Supreme Court has said that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the

15

first instance." *Wood v. Allen*, 130 S. Ct. 841, 849, 175 L. Ed. 2d 738 (2010); *see also Rice v. Collins*, 546 U.S. 333, 342, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stressing that AEDPA forbids a federal court from using "a set of debatable inferences" to set aside a state court's factual determination). Ultimately, to clear the required threshold, the petitioner must show that "a reasonable factfinder *must* conclude" that the state court's determination of the facts was unreasonable. *Collins*, 546 U.S. at 341 (emphasis added); *see also Miller-El v. Dretke*, 545 U.S. 231, 275, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005) (Thomas, J., dissenting) (explaining that a petitioner is not entitled to relief under § 2254(d)(2) unless he can "show that, based on the evidence before the [] state courts, the only reasonable conclusion was that" a constitutional violation occurred). Here, even if the district court's reading of trial counsel's affidavit was a plausible interpretation, it was not the *only* plausible interpretation. And even if the district court's interpretation was, objectively, the most reasonable way to interpret counsel's affidavit, the district court was not free to substitute its reading for the state court's reasonable alternative reading. Because counsel's affidavit is susceptible to multiple reasonable interpretations, that affidavit simply does not constitute the type of "clear" evidence called for by AEDPA.

Trial counsel's affidavit also does not constitute "convincing" evidence that his representation of Neal was the result of oversight, rather than strategy, because—

even if interpreted in the manner Neal and the district court suggest—counsel's affidavit is contradicted by the record. In its analysis, the district court points to trial counsel's assertion that he "did not review the physical or forensic evidence in the case…" as evidence that Neal's counsel "admitted that there was no strategy behind his decision not to use the reports to impeach Arthur Darby," ROA.2982, and, as such, "his failure to use" these reports "was an oversight, not a strategic choice," ROA.2929. Although the court does not explain its reasoning, ROA.2982, for this assertion to make sense, as discussed, the court must have interpreted counsel's reference to "forensic evidence" to include the "forensic reports," like the shoeprint and serology reports in question. However, this debatable interpretation of trial counsel's affidavit is simply impossible to reconcile with trial counsel's actual conduct during trial; even if the district court's interpretation was correct—even if, years after the fact, Neal's counsel really did claim he had not read the forensic reports in this case—the contemporaneous record of Neal's trial, which is contained in the state-court record, proves otherwise.

In the first place, the state introduced testimony concerning both the footprint and serology reports during its case-in-chief, and there is no indication in the record, of any kind, that Neal's trial counsel was surprised by either the existence or details of this testimony; there was no objection; no request for bench conference; no

motion for mistrial. *See* ROA.7727, 7730-7732, 7836. On the contrary, during a cross-examination which consumes numerous pages of the state-court record, Neal's counsel repeatedly questioned the State's witness concerning the shoeprint analysis in this case. ROA.7737:18-7738:4, 7740:29–7743:13. The transcript of that cross-examination—far from supporting the district court's interpretation of counsel's affidavit—in fact, shows that Neal's counsel accurately elicited the findings of the forensic shoeprint report in this case ROA.7737:18-7738:4, 7740:29-7743:13—the *same* report, it bears repeating, that Neal now claims his counsel completely failed to review. Furthermore, in rejecting Neal's *Brady* claim, the district court conceded that these portions of the state-court record "suggest[] that [Neal's] counsel was aware of the serology and shoeprint analysis reports."[2] ROA.2967-2968. Indeed, these portions of the state-court record, appropriately, were the basis of the district court's decision to "uphold[] the state trial court's factual finding that these items were disclosed to the defense." ROA.2969-2970. But these facts evidence counsel's *review* of the forensic reports, for the same reason they evidence his *receipt* of them:

---

2.     Like the State, the district court observed that the State introduced testimony concerning the shoeprint analysis during its case-in-chief, without objection from Neal's counsel, and, further, that Neal's trial counsel explored the results of that analysis during his cross-examination of the State's witness. ROA.2968. The court also agreed that the State elicited testimony concerning the serology analysis without objection, request for a sidebar, or motion for mistrial from Neal's trial counsel. ROA.2968-2969.

counsel's conduct at trial was simply inconsistent with an attorney who was unfamiliar the reports' content.

Second, if the district court's interpretation of trial counsel's affidavit is correct—if "I did not review the … forensic *evidence* in the case" might as well read "I did not review the forensic *reports* in the case"—then Neal's counsel is claiming he did not review *any* of the forensic reports in this case, not just the shoeprint and serology reports. But, here again, the record proves otherwise. For example, the State also introduced testimony concerning a gunshot residue analysis report during its case-in-chief, and—as with the testimony concerning the shoeprint and serology reports—there is no indication in the record that Neal's trial counsel was surprised by either the existence of or the details of this testimony; once again, there was no objection; no request for bench conference; no motion for mistrial. ROA.7836. On the contrary, again, as with the footprint analysis report, Neal's counsel cross-examined the state's witness at length about the gunshot residue analysis results. ROA.7843:28-7849:26. And the transcript of that cross-examination proves, beyond any doubt, both that Neal's counsel had a copy of the gunshot residue report and that he had carefully reviewed it. ROA.7843:28-7849:26. Trial counsel began his cross-examination concerning this analysis by directly referring to a detail from the contents of the gunshot residue report; then, when the witness could not recall the

specific detail from the report that counsel was asking about, Neal's counsel handed the witness a copy of the gunshot residue report to refresh the witness's recollection. ROA.7843:28-7849:26. Then, when the witness had reviewed the report that trial counsel had handed him, Neal's counsel went through the results of the gunshot residue analysis report, location by location, suspect by suspect. ROA.7843:28-7849:26. Here, the state-court record is crystal clear: Neal's counsel had the gunshot residue analysis report, had reviewed it, and was familiar with its contents. So, again, the district court's interpretation of trial counsel's affidavit—to the effect that counsel had not read *any* of the forensic reports in this case—is contradicted by the state-court record. Accordingly, even if that interpretation was correct, it was not unreasonable for Louisiana's post-conviction court to regard counsel's affidavit as unworthy of belief. The fact that this credibility determination was made implicitly does not change the analysis: the presumption of correctness applies not only to explicit findings of fact, but also to those unarticulated findings which are necessary to the state court's conclusions. *See, e.g., Marshall v. Lonberger,* 459 U.S. 422, 433, 103 S.Ct. 843, 850 74 L.Ed.2d 646 (1983) (pre-AEDPA case applying presumption of correctness to implicit finding against the defendant's credibility, where that finding was necessarily part of the court's rejection of the defendant's claim); *LaVallee v. Delle Rose,* 410 U.S. 690, 695, 93 S.Ct. 1203, 1206, 35 L.Ed.2d 637 (1973) (same); *see*

*also Goodwin v. Johnson,* 132 F.3d 162, 183–84 (5th Cir. 1998) (findings of fact can be implied from explicit conclusions of law).

## II. Even under de novo review, Neal cannot show he received ineffective assistance of counsel; thus, *a fortiori*, he fails to satisfy the doubly deferential "unreasonable application" exception to ADEPA's relitigation bar.

### A. Neal has not shown that his counsel performed deficiently.

The district court's erroneous decision to substitute its own factual determination for the state court's is important because strategic choices by counsel "are virtually unchallengeable," *Strickland*, 466 U.S. at 668, and generally "cannot be the basis for constitutionally ineffective assistance of counsel," *Hughes v. Vannoy*, 7 F.4th 380, 388 (5th Cir. 2021). Hence, as this Court has said: "conscious and informed decision[s] on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Geiger v. Cain*, 540 F.3d 303, 308–10 (5th Cir. 2008). When, as here, a habeas court improperly disregards a state-court's determination of fact in favor of its own and grants relief, on appeal, a reviewing court must disregard the habeas court's improper factual determination, accept as true the state court's prior determination, and then review the habeas court's application of law to these corrected facts *de novo*. *See Burt v. Titlow*, 571 U.S. 12, 21–23; 134 S.Ct. 10; 187 L.Ed.2d 348 (2013) (using this procedure). That is the procedure this Court must

follow here. In this case, that means presuming trial counsel's performance at trial was the result of informed strategic decisions. As discussed, this finding is all but fatal to Neal's ineffective assistance of counsel claims because—except in the most exceptional circumstances, not applicable here—informed strategic decisions simply cannot form the basis of ineffective assistance of counsel claims.

The State discussed the reasons trial counsel's decision to not explore the footprint and serology reports further during trial were reasonable—reasons which need not be repeated here. Although the district court largely ignored Darby's prior statement in its reasons for judgment, Neal's brief to this Court discusses it at length. But, here too, defense counsel's treatment of Darby's prior statement was reasonable.

Prior to Arthur Darby's testimony, Petitioner's trial counsel sought disclosure of the contents of Darby's second recorded statement and indicated he would object if it was not provided. ROA.7779:23-31. In connection with that request, the State agreed to give the audio recording of that statement to the Court for *in camera* inspection. ROA.7783:26-32. Prior to Mr. Darby's testimony, the Court reviewed the audio recording of Mr. Darby's second statement. ROA.9389 ("5:55 P.M. COURT RECESSED COURT REVIEWED TAPE OF DARBY") (capitalization original). And, while the record indicates the Court disallowed publication of the audio

22

recording to the jury, it also indicates the Court found that the recording contained "TWO BRADY STATEMENTS." ROA.9389 ("IN CHAMBERS: COURT RULED THAT THERE ARE TWO BRADY STATEMENTS IN THE TAPE") (capitalization original). Consistent with this ruling, the record indicates the State complied with the court's order concerning Darby's statement; indeed, during cross-examination of Darby at trial, Neal's trial counsel specifically referenced the second audio recorded statement given by Darby and, using the contents of that statement, impeached Darby with one of the two statements which the court had identified *in camera*. The relevant passage from defense counsel's cross-examination reads:

> Q.  How many times did you go up there and how many different statements did you make to these people?
>
> A.  Twice
>
> Q.  Twice only? In this first statement, you were bitten by dogs, were you not?
>
> A.  Yes
>
> …
>
> Q.  You made another statement that said that Jarrell Neal was **in the back seat** when you all took off from that scene. Do you remember making that statement?
>
> A.  Yes.

> Q. Okay. And now in this statement you said he was in the
> front seat. That's the statement that you took after you
> were bitten by dogs. On the stand today you said he was
> in the front seat and in another statement you said he was
> in the back seat. Where was Jarrell?
>
> A. **In the front.**

ROA.7809:31-7810:25 (emphasis added). As trial counsel's questions assert, the transcript from the second recorded statement Darby gave does indeed indicate that Darby said, after the shooting, that Jarrell and Zannie Neal got in the backseat of the vehicle. ROA.417. The transcript reads:

> Buras: Now when they came back, who got in what part of the
> car?
>
> Darby: They both got in the back.
>
> Buras: They both got in the back? You were driving?
>
> Darby: Correct

ROA.417. Aside from the transcript of this second audio recorded statement, the record does not contain any other statements from Arthur Darby in which he stated this. Hence, Neal's trial counsel used Darby's prior statement during trial to impeach his testimony on direct examination. The other, unintroduced, portion identified during the trial court's *in camera* review of this prior statement concerned Darby's observations once he, Jarrell, and Zannie arrived at Claudette Hurst's house. The first question and answer states:

24

> Buras: What **kind** of gun did Jarrell have in his hand when he
> got out?

> Darby: I didn't see when he got out.

ROA.414 (emphasis added). The second reads:

> Buras: Did you notice any weapons **when they first got out**?

> Darby: No.

ROA.131 (emphasis added). In his brief to this Court, rather than provide Darby's
actual responses to Buras's question, Neal, without justification, inserts the words
"[a gun]" into Darby's first answer—which is misleading. Neal's Brief at p. 41
(claiming Darby responded "I didn't see [a gun] when he got out.") Contrary to the
suggestions in Neal's brief, Arthur Darby never unambiguously stated that he did
not see a weapon in Jarrell Neal's hands prior to Neal going into the home where the
murders occurred; in context, his first exchange with Det. Buras can be read as re-
lating to the specific *type* of gun Petitioner had in his hands—not whether Petitioner
had a gun *at all*. And Darby's next question and answer from his prior statement can
be read as limited to Darby's specific observations *immediately* upon Neal exiting the
vehicle; Darby never disclaimed *ever* seeing a gun in Petitioner's hands prior to his
entering the scene of the crime. Moreover, both alternative readings of these ex-
changes from Neal's prior statement are consistent with portions of an earlier audio

recorded statement Darby gave to a different investigator shortly after his arrest; there, he had stated:

> Lt. Schultz: Did you know exactly **what kind** of weapon this was?
>
> Mr. Darby: **Not right off**, cause it was dark, and was under like a lot of trees in the dark like.

ROA.456 (emphasis added). Here, Neal's claim that Artur Darby unambiguously claimed to have never seen a gun in Neal's hands on the day of these murders is simply untrue. While both of Darby's exchanges with Buras *can* be read as inconsistent with Darby's trial testimony, the situation is significantly more complicated than Neal suggests.

But even if both areas of Darby's prior statement were clearly inconsistent with his trial testimony, Neal's trial counsel did cross-examine Darby with one of them. And, although he did not introduce the other, an inconsistent reading of the second portion of his prior statement would have, itself, been inconsistent with the statement Darby had made to the police shortly after his arrest. Hence, of the two, the inconsistent statement Neal's counsel did introduce was, by any objective measure, the stronger of the two. And reasonable counsel can choose to pursue a clear impeachment point without having to also take a chance on a riskier impeachment—doing so unsuccessfully would only lessen the impact of the first impeachment. This

kind of selection between alternatives is precisely the type of nuanced, in-the-moment choice courts must be loath to second-guess.

### B.    Neal did not suffer prejudice.

In granting habeas relief, the district court utterly failed to consider the other evidence in this case and, in effect, treated *any* amount of additional impeachment evidence as dispositive of the prejudice prong of the *Strickland* analysis. This was error. The district court had an obligation to weigh Neal's proposed impeachment evidence against the weight of the other evidence in this case before concluding Neal had proven prejudice. It failed to do so. And, here, even if it was true that Arthur Darby's testimony was the "primary" evidence of some components of the State's case, his testimony on these points was adequately corroborated by independent evidence.

For instance, in its original order and reasons granting habeas relief, the district court claimed that: "The testimony of Arthur Darby was the primary evidence presented to show that Petitioner entered the home with the AK-47 and was the shooter." ROA.2986. The district court also insists that "[t]he testimony of Arthur Darby was the only evidence establishing that [Neal] entered the house with the specific intent to kill." ROA.2929. Not so: in addition to Darby's testimony, other

independent evidence separately established each of these facts and was more than

sufficient to persuasively corroborate Darby's testimony to the same effect.

This is so because Neal's actions immediately following these homicides constitutes circumstantial evidence of his involvement during those homicides. Under Louisiana law, to form the basis of a conviction, circumstantial evidence need only "consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience." *State v. Cepriano*, 00-213, p. 6 (La. App. 5th Cir. 8/29/00); 767 So.2d 893, 897. Here, the district court agreed that: "[d]uring the chase, the deputies observed a black male (later identified as Petitioner Jarrell Neal) lean out of the passenger's window and begin shooting at them with an AK-47." ROA.2934. The district court also agreed that the gun Jarell Neal used immediately after the murders, in an attempt to murder uniform police officers, was the same AK-47 used to murder the victims just minutes before. ROA.2934 ("Ballistics testing later showed that casings recovered from inside the 4-Runner and bullets recovered from Fergus Robinson's body were fired from the same AK-47.") Combined, Neal's flight from the scene of these homicides, immediately after those homicides occurred, while in possession of the gun used to commit those homicides—and which he then used to commit multiple attempted homicides against the police officers who were pursuing him—is more than

sufficient under Louisiana law to circumstantially establish both Neal's identity as the shooter during these murders and, separately, his specific intent to kill or to inflict great bodily harm during those crimes. In this case, using reason and common sense, it is not unreasonable to infer that the person who possesses the murder weapon immediately **after** a double murder also possessed that same weapon **during** that double murder. And it is not unreasonable to infer that a suspect who tried to murder several uniformed police officers while fleeing **from** the scene of a double homicide possessed the same intent to kill while he was **at** the scene of a double homicide, just moments previously. And, for that matter, reason and common sense also confirm Arthur Darby's role in this crime: the fact that Darby was the getaway driver **immediately after** the murders, reasonably supports the conclusion that he had the same role, just moments previously, **during** the murders.

In this case, the Louisiana post-conviction court, applying Louisiana law, concluded that—even without Arthur Darby's testimony, and even if the jury had believed that Neal stayed in the car at the time of the murders—Neal was nevertheless still guilty of first degree murder. The federal district court, on the other hand, also interpreting Louisiana law, disagreed. But Louisiana's court was correct. As this Court has said: "[u]nder Louisiana law one may be convicted as a principal for the crime if he has the requisite mental state. *Williams v. Maggio*, 695 F.2d 119, 122 (5th

Cir. 1983), *citing State v. Holmes,* 388 So.2d 722, 726 (La. 1980). "The mental state required for first-degree murder is specific intent to kill or to actively desire the death of, or great bodily harm to, the victim." *Id.* "The specific intent to kill may be inferred from the accused's entire conduct." *Id.*, *citing State v. Butler,* 322 So.2d 189, 194 (La. 1975). In this case—to repeat—the victims, Greg Vickers, ROA.7468:8-19, and Fergus Robinson, ROA.7877:15-30, were killed with the same high-powered rifle which deputies observed in Jarrell Neal's hands just moments after these men had been killed, ROA.7678:30. This fact, even by itself, reasonably supports the inference that Jarrell Neal was the person who used that high-powered rifle during the murders. Hence, as the Louisiana Supreme Court noted on direct review, both "Darby's testimony *and* [Neal's] actions while fleeing the scene prove that the defendant knowingly participated in the planning and/or execution of the crime." *State v. Neal*, 2000-0674, p. 13 (La. 6/29/01); 796 So.2d 649, 659 (emphasis added). So, either was sufficient—and, combined, doubly so. Hence, even if trial counsel had further impeached Darby's testimony, the independent observations by the police officers immediately after these murders was sufficient to establish Neal's guilt for these murders—let alone to corroborate Darby's testimony. Hence, even on *de novo* review, Neal has not carried his burden of proving prejudice—and, considered under

AEDPA's "doubly deferential" leans, he falls even farther from the mark. Relief should not have been granted.

## CONCLUSION

For the reasons discussed in greater detail above and in the State's opening brief, the district court's judgment granting Petitioner, Jarrell Neal, habeas relief should be reversed, and his instant claims for relief should be dismissed with prejudice.

Respectfully submitted,

**PAUL D. CONNICK, JR.**
DISTRICT ATTORNEY
24th JUDICIAL DISTRICT
STATE OF LOUISIANA

**THOMAS J. BUTLER (La. Bar No. 22982)**
Assistant District Attorney
Chief of Appeals

**BY:**

*/s/ Matthew R. Clauss*
**MATTHEW R. CLAUSS (La. Bar No. 31664)**
Assistant District Attorney
Counsel of Record

OFFICE OF THE DISTRICT ATTORNEY
200 Derbigny Street
Gretna, Louisiana 70053
Telephone: (504) 368-1020

*Counsel for Respondent – Appellant*

## CERTIFICATE OF SERVICE

I do hereby certify that on the 5th day of December, 2022, I electronically filed a copy of the foregoing complete and legible brief with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system and that further service will be accomplished by the appellate CM/ECF system.

*/s/ Matthew R. Clauss*
MATTHEW R. CLAUSS (La. Bar No. 31664)
Assistant District Attorney
Counsel of Record

## CERTIFICATE OF ELECTRONIC COMPLIANCE

I hereby certify that in the foregoing brief filed using the Fifth Circuit CM/ECF document filing system: (1) the privacy redactions required by 5th Cir. R. 25.2.13 have been made, (2) the electronic submission is an exact copy of the paper document, and (3) the document has been scanned for viruses with Symantec Endpoint Protection and is free of viruses.

Dated: December 5, 2022.

*/s/ Matthew R. Clauss*
MATTHEW R. CLAUSS (La. Bar No. 31664)
Assistant District Attorney
Counsel of Record

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)
(7) (B) because it contains 5,835 words, excluding the parts of the brief ex-
empted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)
and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief
has been prepared in a proportionally spaced typeface using Microsoft® Word
for Microsoft 365 MSO (Version 2207 Build 16.0.15427.20166) 32-bit in Eq-
uity A 14-point in the main text and Equity A 12-point in the footnotes.

Dated: December 5, 2022

*/s/ Matthew R. Clauss*
MATTHEW R. CLAUSS (La. Bar No. 31664)
Assistant District Attorney
Counsel of Record